IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBERT KEITH MILLER | § | |
| Vs. | § | CIVIL ACTION NO. 6:10CV21 |
| CITY OF EAST MOUNTAIN, TEXAS, *et al.* | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Robert Keith Miller filed the above-styled lawsuit on November 6, 2009. The

matter was referred to the undersigned for all pretrial matters in accordance with 28 U.S.C. § 636.

The parties have filed competing motions for summary judgment. On June 10, 2011, Defendants

filed their Motion for Summary Judgment (document #72). Plaintiff filed a Motion for Partial

Summary Judgment (document #74) on June 17, 2011. For the reasons assigned below, the Court

finds that Defendants' Motion for Summary Judgment should be granted and Plaintiff's Motion for

Partial Summary Judgment should be denied.

*Background*

Plaintiff owns a ranch, referred to as the Sacred Spur Ranch, located in East Mountain,

Upshur County, Texas. The City of East Mountain is a small municipality with approximately 700

residents, located in a rural area. Initially, Plaintiff purchased a five-acre tract in 1998 or 1999. In

2000 or 2001, Plaintiff purchased two adjoining tracts of land, bringing his total property to more

than thirteen acres. Plaintiff moved a mobile home to the property and resides there. Plaintiff

dismantled and moved a 3,500 to 4,000 square foot feed store building from Gladewater to the property. Plaintiff used it as a western museum called the Green Frog Dance Hall. He also constructed a rodeo arena, known as the Buzzard Breath Arena. Beginning in 2002, Plaintiff started hosting live music concerts and barrel races on the property. An original rodeo barn from the Gladewater Rodeo was acquired and moved to the property. The next addition was a restaurant known as the Cowhide Café. The original restaurant had a capacity of 20 to 25 patrons, but it was expanded to hold 65 to 85 patrons. Barrel races were conducted from 2002 to 2006. Finally, Plaintiff renovated a horse barn on the property in 2005 and converted it into a 5700 square foot dance call known as Tivio's Ballroom. Tivio's Ballroom was used for events such as wedding parties, Christmas parties and live music. Plaintiff contends that he spent in excess of $250,000 on construction, maintenance, expansion and rehabilitation of the property.

During these early years of the operation of Plaintiff's business, Plaintiff filed two voluntary consumer debt bankruptcy petitions under Chapter 13 of the Bankruptcy Code; first on December 30, 2003, and then on October 12, 2005. Both petitions were dismissed for failure to make payments to the Trustee in accordance with the confirmed Chapter 13 Plan.[1]

On December 8, 2006, one of Plaintiff's neighbors, Jesse Loffer, spoke at the City Council meeting and complained about the live music noise coming from the Sacred Spur Ranch on Friday and Saturday nights. At the February 12, 2007 City Council meeting, Plaintiff addressed the council, explained his business and expressed his desire to avoid being disruptive to his neighbors. He stated that he was opposed to the adoption of a noise ordinance. Loffer also addressed the City Council,

---

[1]The 2003 bankruptcy petition was dismissed on September 15, 2005, and the 2005 bankruptcy petition was dismissed on April 11, 2007.

complained about the noise coming from Plaintiff's property and stated his support for a noise ordinance. During this same time period, Loffer contacted the police department on multiple occasions to complain about the noise coming from Plaintiff's property. Jason Redding was the police chief at that time. In response to Loffer's complaints, Redding went out to Plaintiff's property and asked Plaintiff to turn down the music. According to Plaintiff, the complaints escalated at the end of 2006 and into 2007.

The noise ordinance issue was again discussed at the next City Council meeting conducted on March 12, 2007. Loffer and another neighbor, Bret Freeman, complained about the music coming from the Sacred Spur ranch on the weekends. After discussing the proposed ordinance and its fines, the City Council adopted a revised noise ordinance. A previous noise ordinance addressing sound amplification systems in vehicles[2] was revised to include the following language:

**II.    Additional Prohibited Noises**

(a)    It is unlawful to make, continue, or cause to be made or continued any loud or raucous noise which:

   (1)    Is offensive to persons in the vicinity thereof;

   (2)    Substantially impairs the peaceable enjoyment of public or private property; or

   (3)    Causes material distress, discomfort, or injury to persons of ordinary sensibilities in the area.

(b)    The following acts, among others, are loud and raucous noises, and are unlawful:

   (1)    The playing of any radio, stereo, phonograph, musical instrument, or

_____

[2]City Ordinance #132, titled "Sound Amplification Systems in Vehicle," was passed and approved on October 11, 2004. The ordinance addressed only persons operating or occupying a motor vehicle who played, used or operated sound amplification systems

similar device in such manner or with such volume so as to offend persons in the vicinity;

(2)    The discharge into open air of the exhaust of any steam or internal combustion engine, whether moveable or stationary, except through a muffler or other device which will effectively prevent the emission of offensive noises therefrom;

(3)    The erection, excavation, demolition, alteration or repair of any building or structure in or adjacent to a residential area or hotel between the hours of 9:00 p.m. and 8:00 a.m. on weekdays and between 10:00 p.m. and 8:00 a.m. on weekends after receiving a complaint and warning to stop the noisy activity, except in situations involving the interests of public safety, official government business, or the protection of the subject property.

(4)    The creation of any noise in a public place adjacent to a church, school, cemetery, court of law, or other public building which, by its nature, is reasonably calculated to disrupt, interfere with, or disturb the proceedings conducted therein;

(5)    The outdoor use of a drum, musical instrument, mechanical loud speaker, or other sound amplification for the purpose of attracting attention by the creation of noise to any performance, show, sales event, or display of merchandise so as to attract customers to any place of business;

(6)    The outdoor use of a mechanical loudspeaker, calliope, mechanically operated piano, organ, musical instrument or other sound amplification or broadcasting equipment, whether stationary or mobile, emitting sound capable of being heard so as to offend persons in the vicinity;

(7)    The demolition, repair, or alteration of a motor vehicle or part thereof in connection with which there is produced any noise which is offensive to inhabitants in the vicinity or which substantially impairs the use of enjoyment of adjacent property.

(8)    The use or operation of any device that is equipped on any motor vehicle, designed to aid in the braking, decompression, or deceleration which results in the excessive, loud, unusual or explosive noise from such vehicle.

(c)    *Exceptions.*  This section shall not apply to:

   (1)    An official of federal, state, or local government or to members of the United States armed forces engaged in the performance of official duties; or

   (2)    Persons engaged in the present performance or rendition of emergency services;

   (3)    Special events conducted with a special event permit authorized by the city;

   (4)    Public parades duly permitted;

   (5)    The use of outdoor sound amplification for outdoor public speeches, ceremonies, political assemblages or paging purposes conducted at a fixed location at least 50 feet from a residential district and the sound was not audible beyond the property line of the premises on which it was located;

   (6)    The use of sound amplification, intercom, or paging devices within the interior of a church, school, auditorium, convention center, government building or similar public meeting place.

**Sanctions**

(a)    Any person, firm, corporation, or agent who shall violate, or cause to be violated, any provision of this section shall be cited and may avoid further prosecution by paying the sum of $200.00 dollars as a civil penalty, including court costs, within ten calendar days after the issuance of the citation at the City of East Mountain business offices.

At subsequent City Council meetings on May 14, 2007 and June 11, 2007, the scope of special permits was discussed.  At the June 11, 2007 meeting, the City Council voted to limit special permits to two special permits per year and to have special permits expire at 1:00 a.m.[3]

After the noise ordinance was amended to include outdoor music, the City of East Mountain

---

[3]On July 13, 2009, the City Council voted to amend the expiration of special permits to 12:00 a.m. instead of 1:00 a.m.

police department continued to receive phone calls complaining about noise coming from the Sacred Spur Ranch. Most of the complaints were resolved by asking Plaintiff to turn down the music. Only two citations were issued to Plaintiff for violating the noise ordinance. The first citation was issued on May 9, 2008 and Plaintiff was found guilty following a trial in Municipal Court. The second citation was issued on December 5, 2008, and Plaintiff pleaded no contest.

The only specific police officer Plaintiff complains about is Jeff Pearson. Jeff Pearson took over as the police chief after Jason Redding resigned. Plaintiff alleges that Chief Pearson harassed him by coming into the restaurant to inspect the liquor, by checking the license plates of his patrons and by interrupting a wedding reception in December of 2007. Plaintiff alleges that Chief Pearson acted at the instruction of the mayor, Ronnie Hill. Plaintiff further alleges that his revenues decreased substantially beginning in 2007 because of Defendants' actions.

On February 18, 2009, Plaintiff filed a voluntary Chapter 11 small business debtor bankruptcy petition. Confirmation was not achieved by the confirmation deadline and the case was dismissed on January 20, 2010. Plaintiff then filed this lawsuit on January 29, 2010, seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff alleges that his constitutional rights have been violated by the selective enforcement and enactment of the noise ordinance, resulting in the deprivation of his property rights without due process of law. Further, Plaintiff alleges that his business has been singled out for criminal prosecution and that the ordinance is unconstitutionally vague.

Plaintiff filed another voluntary Chapter 11 small business debtor bankruptcy petition on March 5, 2010. The above-styled lawsuit was temporarily stayed after the bankruptcy petition was filed. The bankruptcy proceeding was dismissed on May 24, 2010, following an agreement between Plaintiff and the United States Trustee. The stay of the present case was lifted on July 6, 2010. All

operations ceased at the Sacred Spur Ranch in December of 2010.

On June 10, 2011, Defendants City of East Mountain, Ronnie Hill and Jeff Pearson filed a Motion for Summary Judgment. Defendants assert that they are entitled to judgment on Plaintiff's selective enforcement, unconstitutional taking and due process claims, and that the ordinance is not unconstitutionally vague. Further, Defendants contend that Plaintiff has not suffered damages resulting from their actions. Finally, Defendants Hill and Pearson assert that they are entitled to qualified immunity. On June 17, 2011, Plaintiff filed his Motion for Partial Summary Judgment. Plaintiff seeks a partial summary judgment finding that the noise ordinance is unconstitutional.

*Summary Judgment Standard*

Rule 56(a) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated

assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-248. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. "When the moving party has carried its burden

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348 (1986) (footnote omitted).

*Discussion and Analysis*

In this case, the parties filed competing motions for summary judgment. Both motions seek summary judgment on the issue of whether the noise ordinance is unconstitutionally vague and that issue will be considered first.

**Vagueness**

A vagueness challenge arises under the Due Process Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment. *See Holder v. Humanitarian Law Project*, ___ U.S. ___, 130 S.Ct. 2705, 2718 (2010). The void-for-vagueness doctrine is a due process principle that is primarily employed to attack criminal laws. *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir.2000). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294 (1972). A statute or ordinance is unconstitutionally vague when its terms are so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Reeves v. McConn*, 631 F.2d 377, 383 (5th Cir.1980) (*citing Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127 (1926)). Stated differently, "[a] statute is unconstitutionally vague if it does not give 'a person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir.2000) (*quoting United States v. Bird*, 124 F.3d 667, 683 (5th Cir.1997)); *see also*

*Bouie v. City of Columbia*, 378 U.S. 347, 350, 84 S.Ct. 1697, 1701 (1963). Mathematical certainty or precision is not required. *See Fernandes v. Limmer*, 663 F.2d 619, 636 (5ᵗʰ Cir.1981).

Succeeding on a vagueness claim requires more than showing that an enactment requires a person to conform his conduct to an imprecise standard. Instead, a plaintiff must show a complete absence of a standard of conduct. *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688 (1971). Greater scrutiny is applied and more language clarity is required when an enactment interferes with or inhibits a constitutionally protected right. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193-94 (1982) (*rehearing denied*, 456 U.S. 950, 102 S.Ct. 2023); *Grayned v. City of Rockford*, 408 U.S. at 109, 92 S.Ct. at 2298.

It is not uncommon for statutes to have some inherent vagueness because lawmakers are confined to the use of words and phrases. *See Rose v. Locke*, 423 U.S. 48, 49-50, 96 S.Ct. 243 (1975) (*per curiam*). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. at 110, 92 S.Ct. at 2300. Neither perfect clarity nor precise guidance is required. *Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S.Ct. 2746 (1989). A law must, however, give fair warning of what conduct is prohibited such that a man of ordinary intelligence has a reasonable opportunity to act accordingly. *Grayned v. City of Rockford*, 408 U.S. at 108, 92 S.Ct. at 2298-99. "What renders a statute vague . . . is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830 (2008).

Plaintiff asserts that subsection (a) of the ordinance is impermissibly vague. Plaintiff points to the words and phrases, "offensive to persons in the vicinity," "enjoyment of public or private

property," "distress" and "discomfort" as overly vague and subjective. Plaintiff complains that these terms are indefinite and the ordinance leaves too much discretion to the police officers for it to be applied equally. Plaintiff complains, for example, that the ordinance does not define a decibel level.

Words that are not defined in an enactment should be given their ordinary meaning, such as the meaning found in a dictionary. *See, e.g., Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.,* 455 U.S. at 500-01. "Offensive," for example, means "giving painful or unpleasant sensations," or "causing displeasure or resentment."[4] "Enjoyment," is "something that gives keen satisfaction," while "distress" and "discomfort," are "a pain or suffering affecting the body, a bodily part, or the mind," or "to make uncomfortable or uneasy," respectively.[5]

The words used in the noise ordinance are words in common use and are words that are commonly understood. These are terms that are understandable to a reasonable person of ordinary intelligence. It is clear what the ordinance as a whole prohibits. Plaintiff has not shown a complete absence of a standard of conduct. *See Coates v. City of Cincinnati,* 402 U.S. at 614, 91 S.Ct. at1688. The fact that the ordinance incorporates a flexible standard and imparts discretion upon the officials implementing the ordinance does not render the ordinance unconstitutionally vague. *Ward v. Rock Against Racism,* 491 U.S. at 794, 109 S.Ct. at 2755. Moreover, there is no constitutional requirement for a noise ordinance to include a decibel threshold. The Court therefore finds that the noise ordinance provides fair warning concerning what conduct is prohibited. There are no genuine issues of material fact on this issue and Defendants are entitled to judgment as a matter of law that the noise ordinance is not unconstitutionally vague.

---

[4] *Webster's New International Dictionary* (3rd ed. 2002).

[5] *Id.*

**Substantive Due Process**

Plaintiff alleges that the noise ordinance was enacted specifically to deprive him of the operation of his business. Section 1983 states that every person who acts under color of state law to deprive another of constitutional rights shall be liable to the injured party. In other words, to seek relief pursuant to § 1983, Plaintiff must assert claims of constitutional magnitude. He must show that he has been deprived of a constitutional right. All rights guaranteed by the 14th Amendment, including substantive due process, are protected by § 1983. *Findeisen v. N.E. Indep. Sch. Dist.*, 749 F.2d 234, 237 (5th Cir.1984).

Pursuant to the 14th Amendment of the United States Constitution, no "State shall deprive any person of life, liberty, or property, without due process of law ..." U.S. CONST. Amend. XIV. Substantive due process protects individuals from arbitrary and unreasonable government action that deprives any person of life, liberty or property. When asserting a substantive due process violation in a § 1983 case, a plaintiff must "first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir.1995). Establishing a violation of substantive due process requires a showing that the government has deprived an individual of his liberty or property; stated differently, a violation occurs only when the government "works a deprivation" of a "constitutionally protected interest." *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 223, 106 S.Ct. 507, 512 (1985); *see also Simi Inv. Co. v. Harris County, Texas*, 236 F.3d 240, 249 (5th Cir.2000) (*citing Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir.1988)).

Prevailing on a substantive due process claim requires a plaintiff to first establish a

constitutionally protected property right to which the 14th Amendment's due process protection applies. *Simi Inv. Co. v. Harris County, Texas,* 236 F.3d at 249-50. Plaintiff asserts that his business is a constitutionally protected property interest, which is not disputed.

The next issue in a substantive due process evaluation is whether a rational relationship exists between the ordinance at issue and a conceivable legitimate objective. *Simi Inv. Co. v. Harris County, Texas,* 236 F.3d at 250-51. "If the question is at least debatable, there is no substantive due process violation." *Id.* (*citing FM Props. Operating Co. v. City of Austin,* 93 F.3d 167, 175 (5th Cir.1996)). The Supreme Court has recognized that the government has "a substantial interest in protecting its citizens from unwelcome noise." *Ward v. Rock Against Racism,* 491 U.S. 781, 796, 109 S.Ct. 2746, 2756 (1989) (*citing City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 806, 104 S.Ct. 2118, 2129 (1984); *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448 (1949); *Grayned v. City of Rockford,* 408 U.S. at 116, 92 S.Ct. at 2303)). Moreover, "[t]his interest is perhaps at its greatest when the government seeks to protect " 'the well-being, tranquility, and privacy of the home.' " *Id.* (*citing Frisby v. Schultz,* 487 U.S. 474, 484, 108 S.Ct. 2495, 2502 (1988), *quoting Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 2295 (1980)).

A deferential "rational basis" test governs the substantive due process analysis. *Energy Management Corp. v. City of Shreveport,* 467 F.3d 471, 481 (5th Cir.2006). Given the low threshold requirement that a policy, or in this case an ordinance, only has to have a conceivable legitimate objective, and the recognized interest in protecting citizens from unwelcome noise, the Court finds that it is "at least debatable" that a rational basis exists to justify the alleged interference with Plaintiff's property rights. *See Simi Investment Company, Inc. v. Harris County, Texas,* 236 F.3d at 250-51.

Plaintiff additionally alleges that the noise ordinance infringes upon his First Amendment rights. Music is a form of expression and communication that is protected by the First Amendment. *Ward v. Rock Against Racism*, 491 U.S. at 790, 109 S.Ct. at 2753. Where an ordinance touches on expression or speech, the government may impose reasonable restrictions on the time, place or manner of protected speech so long as the restrictions are content neutral and narrowly tailored to serve a significant governmental interest. *Id.* "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* at 791, 109 S.Ct. at 2754 (*citing Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48, 106 S.Ct. 925, 929-930 (1986)). Plaintiff does not present evidence showing that the ordinance targets the content of the music.

In addition to being content neutral, the regulation of the time, place or manner of speech must be narrowly tailored to serve the government's legitimate objective. The Supreme Court has held that "narrowly tailored" does not mean that the regulation must be the "least restrictive or least intrusive means of doing so." *Id.* at 798, 109 S.Ct. at 2757-2758. Plaintiff does not address this issue in his response to the motion for summary judgment. There has been no showing that the regulation is substantially broader than necessary to meet the legitimate objective of protecting citizens from unwelcome noise. As a result, Defendants are entitled to judgment as a matter of law on Plaintiff's substantive due process claim.

**Equal Protection**

Plaintiff asserts that the noise ordinance violates the Equal Protection Clause of the 14th Amendment because it was enacted solely to target his business and has been selectively enforced. The 14th Amendment provides that States may not "deny to any person within its jurisdiction the

equal protection of the laws." In other words, all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). In general, legislation is presumed to be valid and will be upheld if the challenged classification drawn by the statute is "rationally related to a legitimate state interest." *Id.* at 440. "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C. v. Beach Communications Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096 (1993). Typically, an equal protection inquiry is only necessary when the challenged government action classifies or distinguishes between two or more relevant groups. *See Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir.1993). An equal protection claim may succeed, however, even where one person, as opposed to a group, is treated differently from others similarly situated when there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S.Ct. 1073, 1075.

In this case, Plaintiff has not produced evidence showing that similarly situated persons were treated differently by Defendants, which is a prerequisite to maintaining an equal protection claim. *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir.1999). Although Plaintiff contends that he was targeted in the enactment and enforcement of the noise ordinance, he does not point to a single similarly situated individual that was treated differently. There is no showing, for example, that the noise ordinance was applied differently to others in the City of East Mountain. In fact, Plaintiff offers contradictory conclusory statements in his response to the motion for summary judgment, stating first that he has been intentionally treated differently from others similarly situated and then stating that there are no others similarly situated because there are no other bars in town. Plaintiff's standard equal protection claim fails as a matter of law. *Bryan v. City of Madison*, 213 F.3d 267, 276-277 (5th

Cir.2000).

The Fifth Circuit has also recognized a cause of action for selection prosecution as a type of equal protection claim. *Id.* (*citing Allred's Produce v. United States Department of Agriculture*, 178 F.3d 743, 748 (5th Cir.1999). To succeed on such a claim, a plaintiff must show that the complained of acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. *Id.* "The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d at 748.

In this case, Plaintiff does not allege selective enforcement based upon suspect considerations such as his race or religion. Instead, he alleges that the mayor wanted to run him out of business. In his First Amended Complaint, Plaintiff alleges that "Defendants are liable pursuant to 42 U.S.C. § 1983 for their vindictive actions in violation of plaintiff's right to equal protection."[6] Fifth Circuit case law does not squarely address whether personal vindictiveness is an improper motive that can support a claim for selective enforcement in the absence of some other class-based discrimination. *Beeler v. Rounsavall*, 328 F.3d 813, 817-818 (5th Cir.2003). The issue was not reached in *Beeler* because there was no evidence presented in that case showing personal vindictiveness. The court observed, however, that the "text of the Equal Protection Clause, the history leading to its adoption, [and] a century of jurisprudence that has in the main interpreted the clause to prohibit only disparate treatment based upon group or class factors suggests that personal vindictiveness by itself is insufficient as an improper motive in the absence of some other class–or group–based

_____

[6]See Plaintiff's First Amended Complaint, filed on September 28, 2010, p. 8.

discrimination." *Id.* at 818.[7]  In the absence of case law clearly supporting a selective enforcement claim based solely on personal vindictiveness, the Court is not inclined to stretch the existing case law to fit the circumstances presented in this case.

**Qualified Immunity**

Hill and Pearson assert that they are entitled to qualified immunity.  Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).  Qualified immunity is intended to shield government officials from liability for monetary damages for acts in the performance of discretionary functions that were objectively reasonable in light of clearly established law.  *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738 (1982); *Thompson v. Upshur County,* 245 F.3d 447, 456 (5th Cir.2001).  Qualified immunity is only available to an official acting within the scope of his discretionary authority. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 257 (5th Cir.2005).

Traditionally, the qualified immunity analysis has required a two-tier determination as to whether the plaintiff sufficiently alleged a violation of a clearly established constitutional right and, if so, whether the defendant's conduct was objectively reasonable in light of law clearly established at the time of the events giving rise to the suit.  *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996).  The first step was to determine whether the plaintiff's constitutional rights were violated. *Estep v. Dallas County, Texas*, 310 F.3d 353, 363 (5th Cir.2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)).  "If the facts viewed in the light most favorable to the plaintiff do not show a

---

[7]Quoting Timothy Zick, Angry White Males: The Equal Protection Clause and "Classes of One," 89 Ky. L.J. 69, 75 (2000/2001).

constitutional violation, the officer is entitled to qualified immunity." *Id.* Next, the court was required to consider whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692 (1999). If it was determined that there was a violation of a clearly established constitutional right, the final inquiry was whether the official's conduct was objectively reasonable. *Kipps v. Caillier*, 197 F.3d 765, 768 (5ᵗʰ Cir.1999), *cert. denied*, 531 U.S. 816, 121 S.Ct. 52 (2000). Qualified immunity is defeated if an official, "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitution rights or other injury . . ." *Harlow v. Fitzgerald*, 457 U.S. at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992 (1975).

Most recently, the Supreme Court reconsidered its decision in *Saucier v. Katz* and held that this sequential two-step analysis is no longer mandatory. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id*. at 818. Even so, the Court recognized that the *Saucier* protocol is "often beneficial." *Id.* Allowing courts flexibility in the analysis is intended to avoid the unnecessary litigation of constitutional issues that do not effect the outcome of the case and drain the resources of the judiciary and the parties. *Id.*

In this case, the Court finds that it is beneficial to first consider whether Plaintiff has alleged facts showing the violation of a clearly established constitutional right by Hill or Pearson, as required by the first step of the *Saucier* two-step analysis. *Estep v. Dallas County, Texas*, 310 F.3d at 363 (citing *Saucier v. Katz*, 533 U.S. at 201). Plaintiff does not clearly define the specific constitutional

rights allegedly violated by Hill or Pearson, as opposed to his claims against the City. Presumably, Plaintiff's claim against them is his equal protection claim of selective enforcement.[8] As set forth above, Fifth Circuit case law does not squarely address whether personal vindictiveness is an improper motive that can support a claim for selective enforcement in the absence of some other class-based discrimination. *Beeler v. Rounsavall*, 328 F.3d at 817-818. Plaintiff has not established the violation of a constitutional right by Hill or Pearson, much less the violation of a *clearly established* constitutional right. Hill and Pearson are, therefore, entitled to qualified immunity.

*Conclusion*

Based upon the foregoing discussion and analysis, the Court finds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. The noise ordinance is not unconstitutionally vague. Further, the ordinance is content neutral and narrowly tailored to serve a legitimate government objective. Plaintiff has not established a standard equal protection claim. The disputed facts in this case asserted by Plaintiff concern whether Mayor Hill and Police Chief Pearson acted with the desire to shut down Plaintiff's business. Plaintiff has not shown, however, that such alleged personal vindictiveness is sufficient to establish a selective prosecution or enforcement claim. Accordingly, those disputed facts are not genuine issues of material fact. While Plaintiff may believe he has been treated unfairly, he has not shown that the

---

[8]In response to the Defendants' motion for summary judgment, Plaintiff states that he is seeking relief pursuant to 42 U.S.C. § 1983 and "contends that Defendants violated his rights guaranteed him by the First, Fourth and Fifth Amendments to the United States Constitution made applicable to these Defendants by the Fourteenth Amendment to the United States Constitution, by selectively enforcing and enacting an ordinance directed to deprive Plaintiff of the operation of his business enterprises thereby depriving him of his property rights without due process of law, and singling out his business for criminal prosecution based upon an unconstitutionally vague ordinance." Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, filed July 8, 2011, p.2.

alleged unfair treatment amounts to a constitutional violation. Even if the Court were to find in this case that personal vindictiveness is sufficient to support a claim for selective prosecution, the law is not clearly established and Hill and Pearson are entitled to qualified immunity. It is accordingly

**ORDERED** that Defendant's Motion for Summary Judgment (document [#72](#)) is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment (document [#74](#)) is **DENIED**. It is further

**ORDERED** that Plaintiff's claims against these remaining defendants[9] – City of East Mountain, Texas, Ronnie Hill and Jeff Pearson – are **DISMISSED** with prejudice. Any motion not previously ruled on is **DENIED**. It is finally

**ORDERED** that the Pretrial Conference scheduled for October 24, 2011, and the Jury Selection and Trial scheduled for October 25, 2011 are **CANCELED**.

So **ORDERED** and **SIGNED** this **14** day of **October, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

---

[9]Previously, on June 23, 2011, Plaintiff's claims against Denny Medlin, individually and in his official capacity as the Fire Chief of the East Mountain Volunteer Fire Department, and the East Mountain Volunteer Fire Department were dismissed without prejudice.